**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 19 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

BOBBY LEE BRIDGES,

      Defendant - Appellant.

No. 02-3106
(D.C. Nos. 98-40068-01-DES and
01-CV-3167-DES)
(D. Kan.)

**ORDER AND JUDGMENT***

Before **EBEL**, **KELLY** and **MURPHY**, Circuit Judges.

Petitioner Bobby Lee Bridges pled guilty to three counts of a four-count

indictment charging him with manufacturing methamphetamine in violation of 21

U.S.C. § 841(a)(1), conspiracy to manufacture methamphetamine in violation of

21 U.S.C. § 846, and creating a substantial risk of harm to human life while

manufacturing methamphetamine in violation of 21 U.S.C. § 858. (ROA at Docs.

---

*After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument. This
Order and Judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be
cited under the terms and conditions of 10th Cir. R. 36.3.

1, 131.)  His conviction was affirmed on direct appeal.  United States v. Bridges, No. 99-3167, 2000 U.S. App. LEXIS 14376 (10th Cir. June 21, 2000).  He then filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  The district court denied the motion and, finding that Petitioner had failed to make a substantial showing of the denial of a constitutional right, see 28 U.S.C. § 2253(c)(2), also denied Petitioner's subsequent request for a Certificate of Appealability.  (ROA at Doc. 165, p. 18; Doc. 172, p. 3.)  Petitioner then appealed the denial of COA to this court.  We granted COA on two issues: 1) Whether the government violated its plea agreement to recommend the low end of the appropriate Sentencing Guideline range, and 2) Whether Petitioner received ineffective assistance of counsel or whether Petitioner's guilty plea was knowingly given based on Petitioner's claim that his counsel misrepresented to him the substance of the plea agreement.

Having reviewed the record, we find that Petitioner's first claim—that the government violated the terms of its Plea Agreement—lacks merit.  The written plea agreement between Petitioner and the Government, which was signed by both parties, clearly states:

> The government agrees to not oppose the defendant's argument at sentencing that he should receive a sentence at the bottom end of the sentencing range to which he is assigned by the court after careful consideration of all applicable and relevant information presented to the court at the time of sentencing.

(Plea Agreement, § 4(f) (emphasis added).) Petitioner attempts to overcome the plain language of this plea agreement by relying on what he himself wrote in the Petition to Enter Plea of Guilty and Order Entering Plea that was subsequently entered by the district court. In that Petition, Petitioner wrote in the section listing the terms of the plea agreement that the "AUSA will recommend low end of appropriate guideline." (Petition to Enter Plea of Guilty and Order Entering Plea, § 18.) That statement was obviously incorrect, given the clear terms of the plea agreement. Moreover, although the Government and Petitioner both signed the Plea Agreement, only Petitioner and the district court signed the Petition. The Government is not bound by the terms of an agreement that it never signed.

Finally, any misunderstanding as to the terms of the plea agreement was clarified at sentencing. At one point, Petitioner's attorney stated, "[O]ur plea agreement was that the Government would recommend the low end of the guidelines, which was the 140 months." (Sent. Tr. at 10.) Asked by the court for its response, the Government stated,

> In Paragraph 4F of the plea agreement, the Government agreed not to oppose an argument by the Defendant that he should receive a sentence at the bottom end of the sentencing range to which he was assigned. The Government has not opposed any argument by the Defendant to that effect, and I believe we've satisfied the terms of the plea agreement in that regard.

(Sent. Tr. at 11.) Neither Petitioner's counsel nor the court responded to this statement or disputed it in any way. In sum, we conclude that the Government

- 3 -

honored its agreement with Petitioner and that this claim for relief must be denied.

We now turn to the second issue on which we granted COA: Whether Petitioner received ineffective assistance of counsel or whether Petitioner's guilty plea was knowingly given based on Petitioner's claim that his counsel misrepresented the substance of the plea agreement. Petitioner's argument to this effect has two parts. The first part goes to the aspect of the plea agreement that we discussed above: he argues that his attorney misinformed him about the substance of the plea agreement by failing to inform him that the Government agreed only that it would not oppose Petitioner's request to be sentenced at the low end of the applicable guideline range, not that the Government would itself recommend sentencing at the low end. (Aplt. Br. at 8, 14.) The second part of Petitioner's argument goes to the quantity of drugs that he was charged with and sentenced for possessing. He argues that his attorney was ineffective for failing to challenge the drug quantity that was listed in the indictment, and that his attorney persuaded him to stipulate to an incorrect drug quantity by assuring him that the quantity would be irrelevant to his sentence, which would not exceed 60 months. (Id. at 14.) We address each of these arguments in turn.

To prove that his trial counsel was ineffective, Petitioner must satisfy the two-part test established by the Supreme Court in Strickland v. Washington, 466

U.S. 668 (1984). First, he must prove that his attorney's "performance was deficient" and "fell below an objective standard of reasonableness." Id. at 687-88. "In applying this test, we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Bullock v. Carver, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting Strickland, 466 U.S. at 690). Second, Petitioner must prove that his counsel's performance prejudiced him, "which requires a showing that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694).

Turning to the first part of Petitioner's ineffective assistance argument—that his attorney misinformed him about what kind of sentence the Government would recommend—we find that Petitioner has failed to show that his attorney's performance was deficient. As discussed above, the Plea Agreement, which was signed by both Petitioner and his attorney and clarified by the Government in open court, clearly stated that the Government would not oppose any request by Petitioner that he be sentenced at the low end of the applicable Guideline range. The agreement did not state that the Government

would affirmatively recommend such a sentence. Petitioner's argument to the contrary clearly lacks merit.

The second part of Petitioner's ineffective assistance argument goes to the quantity of methamphetamine for which he was found responsible, 100 grams. Petitioner alleges that he should have been held responsible for only 3.5 grams (the amount of an "eight ball") and that his attorney was ineffective for failing to challenge that amount. (Aplt. Br. at 8-9, 14.) He also argues that his consent to the plea agreement was not knowing and voluntary because his attorney misinformed him as to the substance of the agreement. (Id. at 14.) We address and reject these claims in turn.

We find no evidence in the record that the performance of Petitioner's attorney with respect to the drug quantity "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. First, Petitioner himself admits that the Kansas Bureau of Investigation found that the amount of iodine seized from his meth lab was capable of producing 105 grams of actual methamphetamine. (Aplt. Br. at 5–6.) Other than his own unsupported criticism of that finding, he offers no evidence to rebut it. Second, we agree with the district court's conclusion that "the agreement negotiated by counsel on behalf of defendant was remarkable under the circumstances." (Memo. & Order at 11.) In exchange for Petitioner's guilty plea, the Government agreed that it would:

(1) bring no further charges against defendant resulting from the activities that formed the basis of the indictment; (2) not file an information pursuant to 21 U.S.C. § 851, regarding defendant's prior felony drug convictions; (3) recommend defendant receive a three level adjustment for acceptance and [sic] responsibility; (4) file a motion for downward departure if defendant provided substantial assistance pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e); and (5) not oppose defendant's argument at sentencing that he should receive a sentence at the bottom end of the appropriately calculated guideline range.

(Memo. & Order at 2–3.) At sentencing, the court applied an offense level of 32 and found that Petitioner had almost double the number of criminal history points (24) to place him in the criminal history category of VI. (Id. at 3–4.) The guideline range for that combination was 210 to 262 months of imprisonment, but the Government's motion for a four-level downward departure reduced the range to between 140 and 175 months. (Id. at 4.) Had he rejected the plea agreement and gone to trial, he could have faced a sentence of more than 300 months. (Id. at 13.) Petitioner was ultimately sentenced to 175 months. (Id.) This outcome, clearly favorable to Petitioner, did not result from any ineffectiveness on the part of his attorney.[1]

_____

[1]Petitioner makes the additional complaint that it was unfair for him to be held responsible for 100 grams of methamphetamine and receive a 175-month sentence, while his co-defendant was held responsible for approximately 40 grams and sentenced to 60 months. (Aplt. Br. at 10.) The record does not make clear why this discrepancy existed, but at sentencing the Government explained it accordingly:

... I made a mistake on [the co-defendant], and I'll be the first one to stand
(continued...)

- 7 -

Petitioner also argues that his plea was not knowing and voluntary because his attorney misinformed him as to the substance of the agreement. Petitioner alleges that his attorney promised him that if he stipulated to the 100-gram amount, he would receive no more than a 60-month sentence. (Id. at 14.) Petitioner was ultimately sentenced to 175 months. We reject this argument because Petitioner's own statements in the record indicate that his plea was knowing and voluntary.

First, Petitioner signed the plea agreement, which contained a section stating that he was entering his plea "freely and voluntarily" and "with full understanding of all the matters set forth in the Indictment and in this petition, and in the certificate of my attorney which is attached to this petition." (Pet. to

---

[1](...continued)
up here and take my medicine, but I won't go back on my word.... [T]o assert that because I made a mistake with [the co-defendant], that Mr. Bridges is also entitled to the fruits of my error, I just don't see how that applies. Mr. Bridges has gotten—Mr. Bridges has gotten a heck of a deal on this case.

(Sent. Tr. at 12.) The Government's explanation appears plausible, but even without such an explanation, we have held that sentencing disparities resulting from different plea agreements by co-defendants are a legitimate exercise of prosecutorial discretion. See, e.g., United States v. Contreras, 108 F.3d 1255, 1272 (10th Cir. 1997) ("[E]ntering into plea bargains is within the United States Attorney's prosecutorial discretion.... Moreover, allowing a defendant's sentence to be reduced on account of a codefendant's plea bargain may tend to discourage the government from offering plea bargains in cases involving multiple defendants.") (internal quotation marks and citations omitted).

Enter Plea at 6.)[2] Petitioner offers nothing except unsupported allegations to support his coercion argument; such arguments are insufficient to overcome Petitioner's signature on a clear and lawful plea agreement. See Voytik v. United States, 778 F.2d 1306, 1309 (8th Cir. 1985) (noting that "vague allegations of impropriety and coercion fail to overcome the presumption of verity that attaches to the specific representations set forth" in the defendant's petition to enter his guilty plea). Second, Petitioner himself admitted in his § 2255 brief to the district court that his plea was knowing and voluntary; his only complaint was that its terms were unfair:

> It is important to note that petitioner accepted a plea negotiation not to argue the drug quantity while under such agreement would bind petitioner to not argue the point at the sentencing stage. [sic] Petitioner knowingly and intelligently honored the agreement. Mr. Bridges does not challenged the plea; rather he challenges what similar placed defendant have questioned. How much quantity could petitioner produced?

(ROA at Doc. 151, p. 4.) Third, Petitioner's statements at sentencing demonstrate that he knew he was facing a 175-month sentence but do not contain even a hint of coercion:

> Your Honor, I'm guilty for what I'm accused of.... I'm still guilty of what I'm charged of and I made a mistake, a mistake I will probably regret for the rest of my life.... I made a mistake. But for that, you're going to take my life away from me. How many people did I kill? 175 months. Your

---

[2]We would customarily rely also on the transcript of a petitioner's plea hearing, but it is not part of the record on appeal.

Honor, I'm 42 years old. By the time I get out, I won't have any life.... All I'm asking for is a chance at life.

(Sent. Tr. at 17–18.)

In sum, Petitioner offers only bare allegations, unsupported by evidence, to suggest that his attorney misled him with respect to the terms of his plea agreement. Moreover, his own statements to the court, both oral and written, indicate that he understood the terms of his plea agreement. We therefore reject his argument that his plea was not knowing and voluntary.

For the foregoing reasons, we AFFIRM the judgment of the district court.[3]

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

---

[3]We also DENY Petitioner's pending motion for appointment of counsel.